Good morning. My name is Lori Teicher and I'm appearing on behalf of the petitioner, Mr. Larry Wisenbaker. I'll attempt to reserve two minutes for rebuttal. In this case, the district court erred in dismissing Mr. Wisenbaker's federal habeas petition as being barred by the statute of limitations. Mr. Wisenbaker was entitled to equitable tolling on the back end of the litigation, and that's the area that I'll focus on in terms of my argument and that we have focused on in terms of the briefing. From December 17, 2002, the date that the remitter was issued after the denial of the appeal of the state post-conviction proceedings, up until June 10, 2003, when he filed his proper person federal petition. The test as established in Holland v. Florida, which I have 28 Jade for the court, and which all of us in habeas were anticipating and were excited when it came down, as it actually did state that the U.S. Supreme Court agrees that under ADPA a petitioner does have a right to equitable tolling. In addition, what that case does is it really outlines, it provides a good road map in terms of the analysis that needs to happen, and the district court's misapplication of the legal standard of what gradation of attorney error qualifies for equitable tolling. And the district court obviously didn't have the benefit of looking at it through Holland, and so Holland really does cite a more differential standard that we should be dealing with when we're looking at equitable tolling as far as attorney error. The test in Holland, as you're well aware of, is, first of all, that the petitioner has been pursuing his rights diligently, and, secondly, that some extraordinary circumstance beyond his control stood in his way, and we're citing Pace and the court, U.S. Supreme Court, as well as this Court's numerous rulings regarding. Mr. Steiker, could you address the case of Stillman v. Lamarck? That dealt with the concept of a proximate causation theory in these equitable tolling cases. Judge Gould wrote that in 2003. Do you remember that case? What role, if any, should that play in our deliberation? That's interesting in terms of the prison officials' misconduct. What I've argued, and I believe that if you're referring to, Your Honor, the prison officials' misconduct in terms of the accident that happened to Mr. Weisenbaker while he was under protection of the NDOC? Is that what you're referring to? Actually, he refers more that it could be multiple causes. I'm wondering whether the proximate causation concept would apply in this situation, since it appears that your client really never did prepare any of these. He had help from people in the prison. Absolutely. The help from the people in the prison was delayed in part in this instance as opposed to the 1983 actions that were filed and so on, because they kept telling him they needed to file, they needed to file. Yes. Ultimately, they did file, of course, before the time period, well, arguably. I just wonder if you think that proximate causation theory has any role to play in this case. I do. I do. And what I've argued throughout this litigation is that the proximate causation that resulted in the late filing had to do with the multilayered problems that occurred here, the multilayered problems being true, Mr. Weisenbaker's cognitive and physical complications and his ability to do any kind of filing on his own. That's pretty clear, and the district court took note of that. Then on top of that, you have him talking, Mr. Weisenbaker, getting all of this information throughout all of his litigation, and you're absolutely correct that the inmate law clerk that was able to testify because the other inmate law clerk that had been helping him with the 1983 action passed away right when all of this came down. Very inconsiderate of him. It was. And very unfortunate for Mr. Weisenbaker, quite frankly, because he was very clearly not able to do anything on his own and needed direction in that his thinking was very scrambled, and the inmate law clerk testified how Mr. Weisenbaker just isn't able to retain anything. In terms of filing a motion for appointment of counsel, he would lose the envelopes without someone helping him. We don't grant AEDPA relief for equitable tolling if an attorney just has ordinary negligence, do we? No, we don't. Now, in this case, these aren't attorneys, but, in effect, if they were attorneys, we'd say that there was ordinary negligence here, wouldn't we, by waiting? They should just get something on file and then supplement it later? Yes, I agree. And the other overlying factor in here is that you do have to look at the attorney negligence that was occurring, and the argument is that it is, again, beyond, despite what the district court held in terms of his actual court-appointed attorney's negligence along with the inmate law clerk's, his court-appointed attorney in Holland, this case really is very similar to Holland in that you have an attorney where he's being Mr. Weisenbaker has been in very close contact with him. He's not retained for this case. No, he's not. But the problem is he hasn't withdrawn. He's still attorney of record. He still has Mr. Weisenbaker's files, and he hasn't returned them to him. He knows of his cognitive problems because he knows about the stabbing that occurred. And then, finally, he has agreed to help him. And in terms of garden variety negligence, this goes beyond that because you have on one side here the inmate law clerks that are saying, you don't have another year. But he has his lawyer. He has his lawyer who's telling him, oh, yeah, you have another year. And poor Mr. Weisenbaker is desperately, and he writes counsel twice before the statute runs out, then he writes him eight more times saying, what do I do? What do I do? What do I do? You're my lawyer. You told me you would help me. Am I supposed to believe these inmate law clerks? And is that the standard that this court wants us to hold, which is what the district court said, was that once Mr. Weisenbaker got that information from the prison law clerks, it wasn't reasonable for him to not believe it? I don't think that's the standard that we want in terms of equitable tolling, is that all of our Petitioners need to rely upon inmate law clerks and the help of these people that hold themselves out as being inmate law clerks versus an attorney, an attorney who's affirmatively told him he's going to help him. It sounds as if, though, you're asking us to adopt a rule that every jailhouse lawyer whose practice gets bigger than he can handle gets equitable tolling every time he misses a deadline. Mr. Weisenbaker had lots of cases going and lots of activity in those cases. He was prolific, wasn't he? He was prolific through the help of inmate law clerks. He had a couple of different 1983 cases which were being removed from state court into federal court, and he had the one inmate law clerk that was assisting him with that litigation. And the testimony that was presented uncontroverted at the hearing was that Mr. Weisenbaker would have signed every piece of paper that was put in front of him. He may have understood what he was signing, but he was not capable of doing it on his own. Clearly, he'd been stabbed in the brain with an ice pick. He had a 1983 action. He also knew that he had his appeal going on. And if you look at when the order of affirmance came down on November 21st, he immediately contacted his lawyer saying, what do I do? What do I do? What do I do? And in terms of the other part of the test, in terms of whether or not Mr. Weisenbaker has pursuing his rights diligently, he really has. He tried to sort it out as quickly as he could. He tried to get help from inmate law clerks. They said they couldn't do it without his file. He asked his lawyer over and over and over again, are you going to help me? Are you going to help me? If you're not, it looks like you abandoned me. And there's a bunch of letters in the EOR starting at 369, eight of them to him before he finally begs the inmate law clerk that we had testified, I've got to write something. Can you help me with this? I know I don't have my file. And then he sort of writes this free-form federal petition. Do you want to reserve any of your time? Yes, please. Okay. Does the Court have any questions? No. We'll follow up with you and rebuttal. Thank you. Okay. Let's hear from the government. Good morning, Your Honors. May it please the Court. My name is Alicia LaRue, Deputy Attorney General, and I am here to represent the respondents in this matter. I would first of all like to begin by correcting a misstatement made by Ms. Tiger early in her argument. Not all of us practicing habeas corpus were pleased to see the Holland decision come down. Just so that that is clear, as the Court is well aware, the issue in this case is whether or not Mr. Weisenbaker is entitled to equitable tolling with respect to his federal habeas case. The record reflects that he is not entitled to equitable tolling in this case. The Court in the United States Supreme Court in Holland v. Florida stated that a petitioner is entitled to equitable tolling if he shows that he has been pursuing his rights diligently and that some extraordinary circumstance stood in his way and prevented timely filing. I would like to begin with addressing the issue of extraordinary circumstances. In this case, Mr. Weisenbaker has not shown that any extraordinary circumstance stood in his way that prevented a timely filing. Can I just ask you this, Counsel? The district court, and I guess the magistrate was involved, too, but the district court found that because of all of the letters that he had been sending out, his filing, the 1983 action, and I guess there was an action against the prison in an administrative action during this time, if I recall correctly. Yes, Your Honor. That that was evidence of the fact that he was perfectly capable of filing a timely petition coupled with the fact that he actually did file a fairly complete, all elements completed habeas petition. What standard of deference are we to give to the district court's findings of fact? Under AEDPA, the district court's findings of fact are entitled to deference unless they are otherwise shown to be clearly erroneous. So clearly erroneous is the standard from your perspective, right? Yes, Your Honor. Okay. And in this case, the district court's findings of facts were not clearly erroneous. If the court will direct itself to the excerpts of record, at pages 184 to 217, there was testimony during the federal district court evidentiary hearing that Mr. Weisenbaker did conduct all of this civil litigation, that he signed numerous items of correspondence during that time, that he was aware of those contents. Also the thing that bothers me, however, is that, yeah, he signed them, but somebody else prepared them. So the fact that he signed something that was put in front of him doesn't seem to me to be an indication of his ability to do that independently. And I understand your concern, Your Honor. But during that evidentiary hearing, he did say that, I asked for help on my federal civil rights petition. And if you look at the record, during the time that Mr. Weisenbaker should have been working on his federal habeas action, he instead was working on federal civil rights litigation. Inmate James Hendrick was helping him on that federal civil rights litigation. And if the court will turn its attention to pages 174 through 175 of the record, you will note that Mr. Weisenbaker said that Hendrick was helping him first with his civil rights litigation, and then was going to help him with his habeas litigation. And then, unfortunately, Mr. Hendrick died. The record in this case reflects that his AEDPA statute of limitations expired on January 26th of 2003. Unfortunately, Mr. Hendrick didn't pass away until January 30th of 2003. In essence, what you're telling me is that because he directed someone else to help him with his civil rights thing, it's not the fact that he signed things, it's the fact that he directed him as which to take first? He was aware of his situation enough, obviously, to ask for help on federal civil rights litigation. During that same time, he sent correspondence to eight different attorneys asking for help on his civil rights litigation. He didn't send correspondence to any of those attorneys asking for help on his federal habeas petition, despite the fact that Mr. Amesbury had repeatedly made, told him, I cannot, I will not represent you in your federal action. I will only represent you in your state action. And is there any case law that suggests that the fact that a habeas petitioner doesn't personally complete a habeas petition means that it's any less subject to the rules of AEDPA? I am not aware of any case law, Your Honor. Isn't it, so far as you know, the fact that virtually all habeas filings are prepared by attorneys, not by the petitioners themselves? Your Honor, my — Or jailhouse consultants. In my experience, we have perhaps half of the petitions that are filed by attorneys and perhaps half of the petitions that are filed pro se. But the fact that they're filed by attorneys doesn't taint them in any way, does it? In other words, the fact that the petitioner, the jailed person, says, I want you to take care of this and I'm going to work with you, that's the normal process, is it not, as long as they can get a lawyer? I'm sorry, Your Honor, I don't believe I understand the question. My point is, I think my colleague was suggesting that somehow that the fact that Mr. Wiesenbaker was simply directing this and not doing it himself made a difference and my question to you is, does the fact that Mr. Wiesenbaker had either someone helping him in the jail or an attorney outside, does that make any difference, as long as he is directing it, he's in charge of what's going on? Your Honor, I do not believe that it makes any difference at all. The fact is that he's not entitled to counsel, effective assistance of counsel in a post-conviction action, and the fact is that in this case, regardless of whether it was an attorney or an inmate law clerk helping, he did file a petition. It was a pro se petition and the district court found that indisputably that petition was sufficient to initiate his federal habeas action. The other thing that bothers me is we have a situation in which he was stabbed through the ear into his brain and it affected him, it's very clear that his memory was affected, and other things were affected. So the fact that he is directing one way or another bothers me because I don't think we have a situation in which he is clearly able to do that. He, even the doctor that testified indicated that he was seriously affected by this brain damage. And, Your Honor, with all due respect, the federal district court did find that he was capable of directing litigation. He was certainly capable of directing federal civil rights litigation, and that finding of fact, again, is entitled to deference by this Court, unless found clearly erroneous. Also, the federal district court found that Dr. Kinsara's testimony was not credible because Dr. Kinsara did not take into consideration the fact that Mr. Weisenbaker had been conducting this 1983 litigation, and he didn't take into consideration all of the evidence that was before the district court as far as correspondence and the federal civil rights litigation was concerned. He also did not know what was involved in filing a habeas petition, did he? That is correct, Your Honor. I would furthermore like to point out that with respect to Dr. Kinsara's testimony that he testified that I know that within the briefs there is a great deal made about the fact that Mr. Weisenbaker's mental, the effects of the stabbing would have been worse closer to the incident, but Dr. Kinsara testified that it would have been worse during the first year to 18 months. Mr. Weisenbaker was stabbed on January 3rd of 2001. His EDPA statute of limitations expired in January of 2003, so he was right at that two-year mark, and again, he was able in June of the same year to file a very complete pro se habeas petition. Or at least he signed something that was given to him. Your Honor, again, that is not the standard. The fact is, is that he filed it. One way or another, it was filed, and it was as the district court found sufficient. I know you're saying that, but here you've got a person who was stabbed in the brain, and it's a situation where he signed things that were put in front of him. It's not the same sort of thing as a person who is completely mentally capable of directing and all that. We've got a guy who is seriously impaired. Your Honor, again, I would direct the Court to the record at pages 184 through 217, where there is extensive testimony that all of these items of correspondence and these two other lawsuits were filed, and that Mr. Weisenbaker signed everything. He understood the contents of everything, and in some cases, he testified that it was a record. Where is that that he understood the contents of everything? That is correct, Your Honor. Where is that? It goes throughout pages 184 through 217. There are numerous items that he was cross-examined on, and the attorney who represented the State at that evidentiary hearing went through each item of correspondence and asked Mr. Weisenbaker if he understood the contents before he signed them. And if the Court has no further questions, I see that my time has expired. Any other questions? Thank you very much for your argument. Thank you. Ms. Theischer? Did you say it Tiger or Theischer? Tiger. Tiger. Thank you, Your Honors. In terms of the extensive testimony as to whether or not he knew and understood what he was filing, the Attorney General that cross-examined Mr. Weisenbaker took him through every pleading and asked him, did you sign this? Mr. Weisenbaker said yes. Did you understand it? Did you read it? Did you read and understand it? Mr. Weisenbaker said yes, maybe I did at that time. The record is also – there's a difference between understanding something that's put in front of you and the ability to be able to do it. There was extensive testimony regarding Dr. Consora, and yes, Dr. Consora is not a federal habeas expert, but what he did was he didn't take it – he purposefully did not take into consideration the pleadings that Mr. – He didn't know about them, did he? No, he did. He had – what we provided him with were a sampling of pleadings, obviously all of his medical records, and he did extensive testing on his own. But a sampling of pleadings of the correspondence and of pleadings that he prepared in the 2254, and I believe at least one pleading in the 1983. He knew from talking to Mr. Weisenbaker that he had also filed a 1983 action. But what he determined and what he testified to in the record, it states in the evidentiary hearing, is that he had to throw that out and set it aside because it was clear when you read all of this stuff that it comes through in very different voices. And so Dr. Consora was easy – it was easy for him to determine that he had no idea what Larry wrote – Mr. – I'm sorry, what Mr. Weisenbaker wrote on his own and what he had helped from all of these law clerks that had been helping him prepare all of this stuff. You know, I really empathize with your situation, but the problem we have to deal with is we're bound by AEDPA. And AEDPA makes it very, very difficult in a situation like this because of the standard of proof. We had a very extensive hearing at the district court level, went through all of these things. They weighed all of this. There was testimony, live testimony I gather in some instances. And the people who observed, the witnesses, et cetera, made a conclusion. And where is the evidence that we used to find that that was just flat-out wrong? You take all of the evidence that you have before you and you apply Holland. Because I think that the difference here is Holland that came down, you know, a year after. And it is the Supreme Court's determination of what in terms of attorney misconduct and attorney misrepresentations and what a client should receive equitable tolling for. It gives the perfect. It follows that. I appreciate that. But my concern and the reason why I'm struggling with this is because I appreciate the fact that this attorney didn't really help a lot. But the reality is at least there is evidence in the record that he said to your client, I'm not involved in this habeas matter. I'm not involved at all. And so your client knew that he had to rely on these other folks. And the other folks, some of them at least, said, you know, you've got to get this in early. You can change it later on, but you've got to get it in early. It didn't happen. And you could say, well, you know, he had to have the file. Well, he got it in without the file. And when the file ultimately came, it appears that there was virtually nothing in the file that they didn't include in the habeas petition. Am I wrong? Respectfully, I would disagree. Please tell me. I disagree. I'm not going to say you're wrong. I disagree in that the first part of what you were saying in terms of the attorney saying that he wasn't his lawyer. What you have here is you have an attorney who Mr. Weisenbaker was in constant contact with. And I disagree with that. There was virtually no contact, and that was part of the problem. Well, he was trying.  And he did have telephone calls, and he had telephone calls. I take issue with what the attorney general said in that he actively, affirmatively said, I'm not going to help you on the federal habeas, because if you look at all of the letters, the attorney clearly implied to him that he was going to get him help. He was going to get him help, and he had another year. So you've got a couple of problems here. You have the problem which goes, again, under Holland, which the district court did not analyze this case under. The attorney error here rises to more than the garden variety negligence, because you have an attorney saying, actively saying, I'm going to help you. I'm going to find help. I'm going to call the Federal Public Defender's Office and get someone to take a look at this case. I know you're being told a different date. I'm going to call them. I'm going to find out. But I think you have another year. At that point, where Mr. Weisenbaker contacts him and says, wait, wait, wait, you know, I'm being told by these inmate law clerks that I don't have another year. At that point, the attorney, and there's a whole paragraph in Holland talking about the ethical obligation of the lawyer, just as in Holland where Collins, the lawyer, the U.S. Supreme Court says, at that point you have an affirmative duty to move quickly and move quickly for your client. So what we have here is we have a lawyer who misrepresents the date, doesn't correct it, testifies during the evidentiary hearing that, quite candidly, he probably lost the file for him. He says he's going to help him. Mr. Weisenbaker has inmate law clerks who say, I can't do anything for you until I have the file, which is probably why all they could do was the 1983 action. But even then, I take issue with the fact that he wasn't moving on things because the minute his order of affirmance comes down, Mr. Weisenbaker writes Mr. Amesbury, his lawyer, on December 2nd and says, what do we do now? What do we do now? What do we do now? And then has a phone call with him saying, what about this year? I need my file. Can you help me with this? You said you were going to talk to these people. Help me, help me, help me. And he writes eight more times. He accomplishes a lot in 40 days. Was he still counsel of record? Yes, he was. He did not withdraw as counsel of record until May, when he finally got his hands on the file and sent it out for Mr. Weisenbaker. But this Mr. Weisenbaker, despite the injury he had, if I understand your comments, it was he personally that was writing to Mr. Amesbury, and he personally that spoke to him on the phone, not a law clerk, he personally. So he was able to communicate, he was able to say, I need your help, I need your help, and all the other things you talked about. Yes, Mr. Weisenbaker has the ability to communicate and say, I need your help, I need your help, I need your help, because I don't know what to do. I have no idea. And Mr. Amesbury says, I'm not your lawyer, I'm not representing you in this. He never affirmatively says, I'm not your lawyer. He says, I don't do federal habeas, but I'm going to find someone to help you. And I think the important thing is, he's given him wrong information, he's got a duty to make sure that's right, and he's affirmatively said he's going to get him help. Is somebody entitled to a lawyer and a habeas appeal? No, they're not. Okay. But you are entitled to a lawyer that is not going to rise above the level of a lawyer. So if you have a lawyer who says he's not going to represent you, but you think he is, you're entitled to have him do it in the right way. Absolutely, or withdraw from the case and give him the file. Interesting. Any other questions by my colleagues? All right. Thank you both for your argument. Very interesting, very helpful. Thank you. The case of Weisenbaker v. Farrell is submitted.
judges: Todd, Hug, Smith M.